[Crim. No. 11761. In Bank. June 25, 1968.]

In re ALGEA CAFFEY on Habeas Corpus.

Algea Caffey, in pro. per., and Earl Klein, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Respondent.

TRAYNOR, C. J.—Petitioner is confined in the California Men's Colony at Los Padres under a judgment of conviction of violating Health and Safety Code section 11500 (possession of heroin) entered upon his plea of guilty in the San Francisco Superior Court on February 18, 1959. He admitted two prior federal narcotics convictions, and the court sentenced him to imprisonment for not less than two nor more than twenty years (former Health & Saf. Code, § 11712).[1] In this habeas corpus proceeding he challenges the validity of his prior convictions.

Petitioner's first prior conviction was entered on June 30, 1943, in the United States District Court for the Western District of Texas upon his plea of guilty to the charges of unlawful importation of marijuana into the United States without paying the annual registration tax (former 26 U.S.C. § 3234(a), now § 4755(a)), unlawful acquisition of marijuana without paying the transfer tax (former 26 U.S.C. § 2593(a), now § 4744),[2] and unlawful concealment and transportation of marijuana after importing it without invoice or declara-

---

[1] "Any person convicted under this division for having in possession any narcotic, . . . shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years. If such person has been previously convicted of any offense under the laws . . . of the United States, which if committed in this State would have been punishable as an offense described in this division, the previous conviction shall be charged . . . and . . . if admitted by the defendant, he shall be imprisoned in the state prison for not less than two nor more than 20 years."

[2] These statutes are part of what is sometimes referred to as the Marijuana Tax Act.

tion (former 19 U.S.C. § 1593(b), now 18 U.S.C. § 545). Petitioner's second prior conviction was also for unlawful acquisition of marijuana wihout paying the transfer tax. It was entered on April 19, 1950, upon his plea of guilty in the United States District Court for the Southern District of Texas.

The records of the federal courts state that petitioner appeared with counsel at the proceedings in 1943 and 1950. Petitioner alleges and offers to prove, however, that if counsel appeared for him in either proceeding, the appearance was a mere formality and that he was therefore denied the right to effective legal representation. Petitioner first applied for a writ of habeas corpus in the Superior Court of San Luis Obispo County. On June 23, 1967, that court ordered that petitioner be returned to the San Francisco Superior Court for an evidentiary hearing on the validity of the prior convictions. (See *In re Woods* (1966) 64 Cal.2d 3, 11 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Luce* (1966) 64 Cal.2d 11, 14 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker* (1966) 64 Cal.2d 15, 21 [48 Cal.Rptr. 697, 409 P.2d 921].) On August 24, 1967, the San Francisco Superior Court ordered that petitioner be returned to San Luis Obispo County ''for further hearing.'' On September 15, 1967, the superior court of that county denied the petition on the basis of the records in the federal courts. Neither court held an evidentiary hearing.[3]

We issued an order to show cause why petitioner should not have an opportunity in an evidentiary hearing to prove that his prior convictions were obtained in violation of his

____

[3]We note at the outset that petitioner properly applied for the writ in the court of the county in which he was confined, San Luis Obispo. Pursuant to our decisions in the *Woods, Luce*, and *Tucker* cases that court properly ordered the venue changed to the San Francisco Superior Court, the sentencing court, when it appeared that facts were alleged that, if true, would require resentencing. (Cf. Code Civ. Proc., § 397, subd. 1; 28 U.S.C. § 2241(d).) The San Francisco Superior Court declined to entertain the proceeding, apparently on the erroneous ground that the San Luis Obispo Superior Court had no power to transfer the proceeding. The sentencing court, however, must respect a transfer of a habeas corpus proceeding from the superior court having territorial habeas corpus jurisdiction when that court grants the petition to permit reconsideration of the sentence. The sentencing court must conduct an evidentiary hearing if it determines that such a hearing is necessary and must redetermine the sentence in accordanc with its findings. Its order will be appealable as an ''order made after judgment, affecting the substantial rights'' of the defendant or the People. (Pen. Code, §§ 1237, 1238; cf. *People* v. *Stein* (1948) 31 Cal.2d 630, 633 [191 P.2d 409].)

right to counsel. He now contends also that he was convicted under federal statutes that violate the Fifth Amendment guarantee of the privilege against self-incrimination. He invokes principles recently announced by the United States Supreme Court in *Marchetti* v. *United States* (1968) 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697]; *Grosso* v. *United States* (1968) 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709, 716]; and *Haynes* v. *United States* (1968) 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722], which involved the impact of the Fifth Amendment on federal gambling and firearms legislation.

We have concluded that petitioner is entitled to a hearing to determine whether he was denied the right to counsel at the proceeding in 1943. We have also concluded that the federal statute (former 19 U.S.C. § 1593(b), now 18 U.S.C. § 545) prohibiting concealment and transportation of marijuana imported without invoice or declaration does not violate the Fifth Amendment. If petitioner's right to counsel was not violated when he was convicted of violating that statute in 1943, that conviction would be a valid prior conviction sufficient to support his sentence under former Health and Safety Code section 11712.[4]

■■■ If the trial court determines that petitioner's right to counsel was violated at the 1943 proceeding, it must then conduct a hearing on petitioner's allegations that he was denied the right to counsel at the 1950 proceeding, when he was again convicted of unlawful acquisition of marijuana without paying the transfer tax. If the court determines that the right was also denied at the 1950 proceeding, it must disregard both prior convictions in redetermining petitioner's sentence. Only if the court finds that petitioner was not afforded the right to counsel in the 1943 proceeding, but was afforded that right in the 1950 proceeding, will it be necessary to reach the questions whether the federal statute prohibiting the unlawful acquisition of marijuana without paying the transfer tax violates the Fifth Amendment and

---

[4]This offense would qualify as an ''offense under the laws . . . of the United States which if committed in this State would have been punishable as an offense described'' in division 10 of the Health and Safety Code (see former § 11712, now § 11500). The transportation and concealment of marijuana in California is punishable under section 11531. See also *People* v. *Machado* (1960) 180 Cal.App.2d 63, 67 [4 Cal.Rptr. 110]. Moreover, under former section 11712 one prior conviction was sufficient to support a sentence of imprisonment for not less than two nor more than twenty years. (See fn. 1, *supra.*)

whether petitioner may properly assert the privilege against self-incrimniation on habeas corpus following a plea of guilty at trial.[5] Further consideration of the questions relating to the validity of the Marijuana Tax Act will therefore be deferred until after the determination of the right to counsel issue. Meanwhile, the United States Supreme Court may have settled the issue as to the validity of that statute in the light of the *Marchetti, Grosso,* and *Haynes* cases.[6]

Although these decisions cast substantial doubt on the validity of convictions for violations of the Marijuana Tax Act (see dissenting opinion of Chief Justice Warren, *Grosso* v. *United States,* 390 U.S. 77, at p. 83 [19 L.Ed.2d at p. 917]), they afford no reason to doubt the validity of convic-

[5]Defendants in *Marchetti* v. *United States* and *Haynes* v. *United States* asserted the privilege at trial. Defendant in *Grosso* v. *United States* asserted the privilege at trial as to some but not all of the charges against him, but the Supreme Court found no effective waiver of the privilege on the ground that its assertion would have been futile under the preexisting law. (*Grosso* v. *United States,* 390 U.S. at pp. 70-71 [19 L.Ed.2d at pp. 913-914]; see also *Harris* v. *United States* (8th Cir. 1968) 390 F.2d 616.) There is no indication, however, whether the *Marchetti, Grosso,* and *Haynes* cases will be applied to release prisoners whose judgments of conviction had become final at the time of these decisions. Ordinarily, of course, defendants convicted under a statute that is subsequently declared unconstitutional are entitled to release, whether their judgments of convictions are final or not. (See *Ex parte Siebold* (1879) 100 U.S. 371, 376-377 [25 L.Ed. 717, 719].) When the constitutional infirmity depends on its "proper assertion" (see *Marchetti* v. *United States,* 390 U.S. at p. 42 [19 L.Ed.2d at p. 894]), the result is not so clear.

[6]In these cases the Supreme Court reversed convictions for failing to register and pay the occupational tax for the business of accepting wagers (26 U.S.C. §§ 4411, 4412; *Marchetti* v. *United States*); for failing to pay the excise tax on the gross amount of all wagers accepted (26 U.S.C. § 4401; *Grosso* v. *United States*); and for possession of unregistered firearms (26 U.S.C. §§ 5851, 5841; *Haynes* v. *United States*).) To comply with these statutes defendants were required to disclose information exposing them to "substantial and 'real' . . . hazards of incrimination" in areas " 'permeated with criminal statutes.' " (*Marchetti* v. *United States,* 390 U.S. at pp. 53, 47 [19 L.Ed.2d at pp. 901, 897].) The court determined that such methods of taxing and regulating unlawful activities contravened the Fifth Amendment privilege against self-incrimination.

*United States* v. *Covington* (S.D. Ohio 1968) 282 F.Supp. 886, holding 26 United States Code section 4744(a)(1) unconstitutional, is the only reported decision we have found applying the *Marchetti, Grosso,* and *Haynes* decisions to the Marijuana Tax Act.

The United States Supreme Court has granted certiorari in *Leary* v. *United States* (5th Cir. 1967), to consider the question whether the registration and tax provisions in 26 United States Code sections 4741(a), 4742 and 4744 (a) violate petitioner's privilege against self-incrimination in the light of the *Marchetti, Grosso.* and *Haynes* cases. (June 10, 1968; 392 U.S. 903 [20 L.Ed.2d 1362, 88 S.Ct. 2058].)

tions for smuggling marijuana. It is true that petitioner's conviction in 1943 for unlawful concealment and transportation of marijuana rests on his failure to declare and invoice it upon importation.[7] Such declaration, however, in fact prevents the crime of smuggling from occurring. ''The purpose of requiring the goods to be declared is to prevent their importation or to make sure they are not imported without a duty being paid.'' (Mansfield, *The Albertson Cases: Conflict Between the Privilege Against Self-Incrimination and the Government's Need for Information,* 1966 Sup.Ct.Rev. 103, 141.) Moreover, declaration of possession of marijuana at the port of entry into the United States does not expose the declarant to prosecution for untaxed possession within the United States under 26 United States Code section 4744 or 4755. ''Had [petitioner] invoiced the marijuana at his first opportunity, he would have been relieved of it by the Customs agents, and thus would not have smuggled it, and would not have been *in possession of it within the United States,*'' (Italics in original. *Pickett* v. *United States* (S.D. Cal. 1963) 223 F.Supp. 695, 696, cert. den. (1964) 379 U.S. 939 [13 L.Ed.2d 349, 85 S.Ct. 346] (upholding validity of 21 U.S.C. § 176a, substantially identical with former 19 U.S.C. § 1593 and with 18 U.S.C. § 545) ; *Rule* v. *United States* (5th Cir. 1966) 362 F.2d 215, 217 (same).) Thus, the ''harassment of a particular class of persons or the obtaining of evidence in order to prosecute them'' is not the purpose of the declaration requirement. (Mansfield, *op. cit. supra,* 1966 Sup.Ct.Rev. at p. 141; see also concurring opinion of Justice Brennan, *Grosso* v. *United States, supra,* 390 U.S. 72 at p. 73

---

[7]18 United States Code section 545 provides: ''Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law . . . is subject to the prescribed penalties.''

The indictment charged that on or about May 24, 1943, petitioner ''unlawfully concealed and facilitated the transportation and concealment, after importation, of 15 pounds of marijuana, which had been theretofore imported into the United States of America from the United States of Mexico without the same being invoiced and without proper entry thereof being made, and without declaration thereof being made to any proper officer of the United States, . . . then and there well knowing said merchandise to have been so imported contrary to law at the time . . . [he] concealed and facilitated the transportation and concealment thereof.''

[19 L.Ed.2d at p. 914].) We therefore conclude that petitioner's 1943 conviction under former 19 United States Code section 1593b did not violate his privilege against self-incrimination.

■ Whether that conviction properly supports an increase in punishment under former Health and Safety Code section 11712 therefore turns on the determination of the right to counsel issue. The minutes of the United States District Court for the Western District of Texas, El Paso Division, state that on June 30, 1943, petitioner and a codefendant appeared "each in proper person and by W. H. Fryer and Jos. L. Dunigan, their counsel, respectively," and pleaded guilty to the charges in the indictment filed June 21, 1943. Judge Charles A. Boynton then sentenced petitioner to four years' imprisonment. The "Memo of Proceedings" for the date of trial also contains the notation, "W. H. Fryer, Attorney for Caffey." In his return to the order to show cause, the Attorney General states that Mr. Fryer is deceased and Mr. Dunigan has no independent recollection of the case.

In his verified petition petitioner alleges that he is a Negro and that courts in the southern states customarily meted out "kangaroo court" justice to Negroes. He offers to prove by sworn eyewitness testimony that he first appeared in court on June 15, 1943, and pleaded guilty without counsel and without waiving counsel. He alleges that on June 30, 1943, the following events occurred:

"Honorable Judge C. A. Boynton asked Petitioner if he had counsel, Petitioner replied he *did not have counsel.* The Judge again asked Petitioner if he was Guilty of the Charges, Petitioner replied that he was guilty. . . . The Honorable Judge C. A. Boynton then spoke to the Courtroom—Saying, Is there anyone in the Court who will volunteer to stand up beside this man while being sentenced? At that time an Attorney stood at Petitioner's side, (Undoubtedly, it was this Attorney, W. H. Fryer that's referred to in the transcript), and sentence was passed. Petitioner did not see or talk to any counsel from the time he was arrested, or see any counsel during his court appearances, and did not talk to the counsel that stood beside him while he was being sentenced." (Italics and statement in parentheses are petitioner's.) The truth of these allegations can be determined only in an evidentiary hearing.

■

If petitioner proves that he was denied the right to counsel at the 1943 proceeding, he is entitled to a hearing on his allegations that he was denied the right to counsel at the 1950 proceeding as well, and that the 1950 conviction therefore cannot support his sentence under former Health and Safety Code section 11712. The judgment of the United States District Court for the Southern District of Texas, Laredo Division, states that on April 19, 1950, petitioner "appeared in person and with counsel," and pleaded guilty to count three of the indictment. On motion of the United States Attorney, Judge James V. Allred dismissed counts one and two, and sentenced petitioner on count three to four years' imprisonment. The docket entry for that date states that petitioner and codefendant Thomas appeared with attorneys W. W. Allen and Jacob Hornberger.

The Attorney General has attached to his return the affidavit of William W. Allen, a Laredo attorney, to which Mr. Allen had appended a copy of a letter he wrote Mr. Hornberger on April 14, 1950, to acknowledge receipt of a $100 retainer in the case of "United States vs. Thomas and Caffey," a copy of an entry for the retainer in his income journal for 1950, and copies of two entries in his 1950 Daily Schedule Book. An April 17 entry states, "United States vs. Thomas and Caffey—Federal Court"; an April 19 entry states, "United States vs. Thomas and Caffey, 1:30 p.m., Pleas of Guilty." Mr. Allen states in his affidavit that "Mr. Hornberger was originally employed and represented either one or both of the defendants at the preliminary examination and asked me to appear with him in the case at the time of entry of the plea of guilty. . . . I recall talking to the two defendants in the detention cell in the Federal Court Building prior to pleading in Court. . . ."

The Attorney General also submits with his return an affidavit of Jacob Hornberger stating that he has no independent recollection of the case. He appended to his affidavit a copy of a receipt that he gave Mrs. Gladys Caffey on April 14, 1950, for $200 "in full payment of fees for representation of Alger Caffee [sic], and Brewington C. Thomas in Federal charge," a telegram dated April 17, 1950, and sent from Lufkin, Texas, stating: "Be late getting there due to bad weather and sickness, but on our way now. Gladys Caffey," and the original of the letter he received from Mr. Allen acknowledging receipt of the $100 retainer.

Petitioner alleges that Judge Allred scheduled the trial for

April 19, 1950, upon petitioner's request that "he would like to wait until his wife arrived from California to see if she had money to retain counsel for him. . . ." Petitioner's wife arrived, but did not have money enough to retain counsel for petitioner. He offers to prove by sworn eyewitness testimony that he pleaded to one count of the indictment after informing the court that he had no counsel and no money to retain one. "Then the Judge asked Petitioner if there was anything he wanted to say before sentencing. At this time Petitioner's wife asked the Honorable Judge if she could address the Court, which she was permitted to do. She asked the Court to show leniency. . . . The Honorable Judge Allred then sentenced Petitioner to four years. Petitioner did not have counsel and did not waive counsel."

In an affidavit Mrs. Gladys Caffey states that at the time of her husband's arrest in 1950 she was residing in Los Angeles and that she drove to Laredo to join him at his trial. She denies sending a telegram to Mr. Hornberger from Lufkin, Texas, stating that Lufkin is near the eastern border of Texas and was not on her route from Los Angeles. She denies paying Mr. Hornberger $200 to represent her husband. "I was present in court with my husband at the time of sentencing and there was no attorney present representing him or who stated anything to the court on his behalf."

It is for the sentencing court to resolve the conflict in the evidence. That court has not had the benefit of the affidavits of Mrs. Caffey, Mr. Hornberger, and Mr. Allen. We must therefore remand the case for the trial court's determination in the light of these affidavits and any evidence the parties might offer in the trial court.

If true, petitioner's allegations would render the prior convictions "devoid of constitutional support." (*People* v. *Coffey* (1967) 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15].) If no counsel was present at petitioner's court appearances and if petitioner did not waive the assistance of counsel, the convictions violated the Sixth Amendment right to counsel that *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357], secured to indigents in federal courts. Nor can the token presence of counsel that petitioner concedes as to the 1943 conviction satisfy constitutional requirements. ■ "The denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of

counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." (*Avery* v. *Alabama* (1940) 308 U.S. 444, 446 [84 L.Ed. 377, 379, 60 S.Ct. 321]; see *Powell* v. *Alabama* (1932) 287 U.S. 45, 53, 71 [77 L.Ed. 158, 162-163, 171-172, 53 S.Ct. 55, 84 A.L.R. 527]; *In re Newbern* (1960) 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116]; *Von Moltke* v. *Gillies* (1948) 332 U.S. 708, 722-723 [92 L.Ed. 309, 320-321, 68 S.Ct. 316]; *Jones* v. *Cunningham* (4th Cir. 1962) 297 F.2d 851, 855.)

 The Attorney General contends that the federal records import a presumption that official duty was regularly performed (see Code Civ. Proc., § 1963, subd. 15), and that petitioner is therefore not entitled to an evidentiary hearing on the validity of the prior convictions. The presumption of regularity, however, is not a conclusive one, and we do not invoke it to preclude a showing that the record is incomplete or inaccurate.[8] A docket entry that defendant was " 'duly arraigned' " and " 'informed . . . of his legal rights,' " for example, " 'does not state how, when or in what manner' " defendant was informed, "nor does it specify which of his various rights were thus made known to him." (*In re Johnson* (1965) 62 Cal.2d 325, 330-331 [42 Cal.Rptr. 228, 398 P.2d 420]; see also *In re Smiley* (1967) 66 Cal.2d 606, 622 [58 Cal.Rptr. 579, 427 P.2d 179].) Similarly, the record entry that petitioner appeared with counsel does not state when or how counsel was appointed, nor whether petitioner pleaded guilty with the assistance of an attorney who was his counsel in fact as well as pro forma. Petitioner has the burden of disproving the facts recited in the records. When, as here, he makes a specific offer of reliable proof, he "must be given the opportunity to present . . . testimonial and documentary evidence relevant to the disputed issues." (*Townsend* v. *Sain* (1963) 372 U.S. 293, 322 [9 L.Ed.2d 770, 791, 83 S.Ct. 745]; *Wright* v. *Dickson* (9th Cir. 1964) 336 F.2d 878, 883; see *In re Bell* (1942) 19 Cal.2d 488, 501 [122

---

[8]The Attorney General relies on our statement that "The record imports absolute verity. . . ." (*In re Connor* (1940) 16 Cal.2d 701, 708 [108 P.2d 10].) That statement, however, was preceded by the observation that "There is nothing . . . in the method shown to have been employed in preparing the record, or in any other matter brought out by petitioner, which would cast a doubt upon the verity and authenticity of the [record]." (*In re Connor, supra,* 16 Cal.2d at pp. 707-708.) The court then proceeded to determine from all the available information that petitioner's claims were unfounded.

P.2d 22]; *Haacks* v. *Wainwright* (5th Cir. 1968) 387 F.2d 176, 179.)

■ The Attorney General contends that petitioner's failure to challenge the validity of the prior convictions at an earlier time precludes his doing so on habeas corpus. We held in *In re Woods, supra,* 64 Cal.2d 3, *In re Luce, supra,* 64 Cal.2d 11, and *In re Tucker, supra,* 64 Cal.2d 15, that habeas corpus would lie to attack the constitutional validity of foreign prior convictions. The Attorney General points out that the petitioners in those cases attacked state convictions whose unconstitutionality was determined in 1963 in *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], after the petitioners' California convictions were entered (see *In re Woods, supra,* at pp. 7-8), whereas federal courts were required to appoint counsel for indigents since 1938 (*Johnson* v. *Zerbst, supra,* 304 U.S. 458), before petitioner was convicted.

It is true that defendants must ordinarily raise a constitutional issue by a pretrial motion to strike the prior conviction from the information or indictment, or by entering a plea denying the prior conviction. (*People* v. *Coffey, supra,* 67 Cal.2d 204, 215, 217.) Petitioner's failure to pursue these remedies, however, could not constitute a waiver of the right to a hearing in this case, for at the time of his California conviction in 1959, we had not yet made it clear that defendants could offer extrinsic evidence to disprove facts recited in official records of conviction or to prove that an incomplete record masks violations of constitutional rights.[9] Moreover, to find a waiver in these circumstances would unduly restrict the right to relief from a substantial increase in punishment based on a constitutionally invalid conviction.[10]

---

[9]Prior to the *Woods, Luce,* and *Tucker* cases, we limited our examination of foreign convictions to consider whether the foreign crime fit one of the categories established by Penal Code section 644 for the purpose of determining habitual criminality (*In re McVickers* (1946) 29 Cal.2d 264, 278-279 [176 P.2d 40]) and to determine whether the rendering court had jurisdiction to try the defendant. (See *In re Wolfson* (1947) 30 Cal.2d 20, 31 [180 P.2d 326].) That a factual hearing may be appropriate and permissible to establish constitutional infirmities did not become clear until 1966 when the *Woods, Luce,* and *Tucker* cases were decided.

[10]The fact that petitioner's prior convictions were entered upon pleas of guilty of course does not preclude his contending that he did not have nor waive the assistance of counsel. (*Rice v. Olson* (1945) 324 U.S. 786, 788-789 [89 L.Ed. 1367, 1369-1370, 65 S.Ct. 989].) The prior convictions that we permitted petitioners to attack in the *Woods, Luce,* and *Tucker* cases, for example, were entered upon pleas of guilty. (See also *In re Johnson* (1965) 62 Cal.2d 325, 333-334 [42 Cal.Rptr. 228, 398 P.2d 420].)

774

The writ is granted and the Superior Court of the County of San Francisco is directed to redetermine petitioner's sentence in *People* v. *Caffey* (S.F. Superior Court No. 55643) in accordance with the views expressed herein. The question we have reserved of the constitutionality of the federal statutes can thereafter be reviewed, if necessary, on appeal from the trial court's order resentencing petitioner.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.