[Crim. No. 19045. In Bank. Oct. 22, 1976.]

In re TERRELL C. ANDREWS on Habeas Corpus.

## COUNSEL

Rowan K. Klein, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Donald F. Roeschke, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—By petition for writ of habeas corpus petitioner challenges the part of a judgment sentencing him to a term of imprisonment that purports to limit the effect of sentencing under Penal Code section 1202b[1] to a term imposed for the offense of robbery, while leaving unaffected an additional, consecutive term imposed upon a finding that he used a firearm within the meaning of section 12022.5.[2]

Pursuant to a plea bargain whereby a charged violation of section 217, an allegation that he caused great bodily injury to the robbery victim,

---

[1]Unless otherwise specified all references herein are to the Penal Code.

Section 1202b provides: "In any criminal proceeding in which defendant is convicted of a felony or felonies and is committed to the custody of the Director of Corrections, if defendant was, at the time of commission of the offense or offenses, or of the apprehension from which the criminal proceeding resulted, under the age of 23 years, the court may, notwithstanding any other provision of law fixing or affecting the penalty for the offense or offenses, specify that the minimum term of imprisonment for the offense or the offenses cumulatively shall be six months. This section does not apply to any offense punishable by death."

[2]Section 12022.5 provides in pertinent part: "Any person who uses a firearm in the commission . . . of a robbery, . . . shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

and an allegation that he had suffered prior felony convictions were dismissed, petitioner pleaded guilty to first degree robbery (§§ 211, 213), and admitted the truth of allegations that he had been armed (§ 12022) with, and had used (§ 12022.5) a firearm in the commission thereof.[3] The sentence to be imposed was not a condition of the bargain.

On September 27, 1972, the court sentenced petitioner to a term of imprisonment for the robbery, invoking section 1202b, and to a consecutive term of five years to life under section 12022.5 because he had used a firearm. Counsel had argued on behalf of petitioner that because petitioner's offenses were the result of a serious narcotic problem the court should consider committing him to the California Rehabilitation Center even though the probation officer had expressed doubt that petitioner would be accepted for treatment. The court determined, however, that petitioner was not a suitable candidate for such treatment. Counsel also suggested other alternative dispositions among which was the sentence to imprisonment for the robbery under the terms of section 1202b, with an additional five-year-to-life term as provided by section 12022.5. The court expressed great concern over the serious injuries petitioner had inflicted on the victim and noted what the court perceived to be a propensity for violence in petitioner's background. Notwithstanding that concern and an inability to find "any ray of light in this defendant's background to afford any reasonable expectation that he's going to be anything but in trouble," and only after counsel assured the court that his understanding of section 1202b was that the section permitted the limitation of its effect to the robbery term alone, the judge accepted counsel's suggestion.[4] If authorized, this

[3]If, as appears to be the case, the victim of assault was the robbery victim and the two offenses were committed with a single intent and objective as part of a single course of criminal conduct, sentence on the assault charge could not have been executed in any case. (§ 654; *People* v. *Beamon* (1973) 8 Cal.3d 625, 636-639 [105 Cal.Rptr. 681, 504 P.2d 905].) Petitioner did, however, receive a substantial benefit in the elimination of the allegation that he had intentionally caused great bodily injury to the robbery victim, which if admitted or proved would have increased the minimum term for the robbery from 5 years to 15 years. (§ 213.)

[4]The court specified: "The defendant will be sentenced to the State Prison for the term prescribed by law for first degree robbery, which is five years to life. [¶] However, in connection with that sentence only, the Court will impose the conditions of 1202b of the Penal Code, making the minimum sentence six months. However, the Court additionally imposes the five years provided for in 12022.5 and directs that the commitment specifically indicate that the Court's direction of invoking 1202b is not to apply to the conditions of section 12022.5 of the Penal Code."

The court added: "I want the Adult Authority to know that this defendant has only one thing in his favor and that is his age. At this point in his life, he has indicated

judgment would result in a cumulative minimum term of five and one-half years.

The court would have been more than justified in refusing to invoke section 1202b at all, but it nevertheless invoked that section because it had "some faith and confidence" in the Adult Authority which body, it hoped, "upon viewing this defendant's background and history will be very careful about when, if ever, they release him into society."

■ ▪ Petitioner now contends that this sentence is unauthorized by the terms of section 1202b. We agree. ■ Habeas corpus is an appropriate means by which to challenge an unauthorized sentence. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839].)

At the outset we note that notwithstanding what may appear to have been invited error, arising from his counsel's misinterpretation of section 1202b, petitioner is not estopped to raise this issue. ■ A court is without authority to impose a sentence not prescribed by statute. (§ 12; *In re McInturff* (1951) 37 Cal.2d 876, 879 [236 P.2d 574].) To the extent that a judgment imposing a term of imprisonment contains unauthorized surplusage, it is void. (*In re Seeley* (1946) 29 Cal.2d 294, 302-303 [176 P.2d 24].)

We turn first to an examination of the language of section 1202b. ■ Provisions of the Penal Code must be construed " ' "according to the fair import of their terms, with a view to effect its objects and to promote justice." ' [Citation.] Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction." (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].) If ambiguity is found, the statute is to be interpreted "in the light of the objective sought to be achieved by it, as well as the evil sought to be averted." (*People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400].)

absolutely no concern for the welfare of others and that he should be considered for early parole only if his conduct in custody manifests a true orientation to the point where he has some regard for the physical well being of other people."

Applying these rules we conclude that the language of section 1202b itself should be determinative.[5] Section 1202b expressly provides that if the sentencing judge exercises his discretion to invoke its provisions in sentencing a youthful offender, he may "specify that the minimum term of imprisonment for the offense or the offenses cumulatively shall be six months." There would seem to be no ambiguity in language which gives the judge the power to "specify that the minimum term of imprisonment . . . shall be six months." The authority of the judge begins and ends with the direction that the minimum term is to be six months.

Respondent, however, argues that because the statute provides that the sentencing court "may" apply its provisions to any offense or offenses, it follows that it may fix the minimum term of any offense at six months and need not apply the six-month term to the whole judgment. The dissent, going beyond even that interpretation, suggests that the statute is susceptible to an interpretation that would permit the court to fix the minimum term or terms for any of the offenses at any period between six months and the minimum statutory term otherwise applicable. Both suggestions appear to overlook the plain language of the statute which authorizes the court to fix a single minimum term for all offenses cumulatively at six months. Even were we persuaded that the statute was ambiguous, however, such legislative history and "administrative" construction as does exist, both of which are entitled to great weight (*People v. Superior Court (Carl W.)* (1975) 15 Cal.3d 271, 277 [124 Cal.Rptr. 47, 539 P.2d 807]; *City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371]), support our interpretation of the language, as do those cases in which we have heretofore had occasion to consider the application of section 1202b to sections 12022 and 12022.5.

Section 1202b was enacted in 1959. (Stats. 1959, ch. 916, § 1, p. 2948.) In the intervening 17 years sentencing judges have uniformly applied it by specifying that the defendant would serve a minimum term of 6 months. This is the first instance in which an appellate court has been called upon to review any other attempted application. The principal criminal law practice manual published by the Continuing Education of the Bar has so interpreted section 1202b in chapters authored by now retired appellate Justice John F. Aiso[6] who was a superior court judge

---

[5]For the full text of section 1202b, see footnote 1, *ante.*

[6]Judge Aiso wrote in a chapter on sentencing that "if the defendant is under 23, the judge can include in his [1203.01] statement his recommendation under Pen C § 1202b

when the section was enacted and by Everette M. Porter,[7] who was a member of the Adult Authority at that time.

This interpretation is also consistent with the philosophy of the indeterminate sentence law and the only statement of the legislative purpose in enacting section 1202b that has come to our attention.

Under the indeterminate sentence law responsibility for fixing the length of time within the statutory maximum and minimum a convicted felon is to serve in prison and/or on parole is vested in the Adult Authority. (§§ 1168, 5077; *In re Rodriguez* (1975) 14 Cal.3d 639, 645 [122 Cal.Rptr. 552, 537 P.2d 384].) Until 1944, a sentencing judge was permitted to commit to the Youth Authority a defendant who had been under 23 years of age when apprehended (Stats. 1941, ch. 937, § 1, p. 2526), in order to "substitut[e] for retributive punishment[,] methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses." (Welf. & Inst. Code, § 1700.) A youthful offender committed to the Youth Authority after conviction of a felony had to be discharged when he reached his 25th birthday (Welf. & Inst. Code, § 1771) and might be discharged and/or paroled at any time the Youth Authority determined that he could be released without danger to the public. (Welf. & Inst. Code, §§ 1765, 1766.)

In 1944, however, the Youth Authority Act (Welf. & Inst. Code, § 1700 et seq.) was amended to lower the age of persons who might be committed to the Youth Authority to those who were under 21 years of age at the time of apprehension. (Stats. 1944, Third Ex. Sess., ch. 2, p. 22.) The result of the amendment was that persons formerly entitled to consideration for rehabilitative treatment as youthful offenders through commitment to the Youth Authority had to be committed to the Department of Corrections and became subject to the same restrictions relating to parole and discharge as applied to other adult felons, even though in many cases codefendants under 21 years of age whose culpability and relative level of maturity was the same, had been

---

that the defendant be given a minimum six-month term." (2 Cal. Criminal Law Practice (Cont.Ed.Bar 1969) p. 203.)

[7]In a chapter on state imprisonment and parole administration, Mr. Porter, a lawyer and court commissioner, wrote with regard to the powers of a sentencing judge under the Indeterminate Sentence Law (§ 1168): "In a few instances, the judge has limited power to affect duration: . . . if the defendant was under 23 when the crime was committed, the judge can specify a minimum (but not a maximum) sentence of six months (Pen C § 1202b; . . .). . . ." (*Id.*, at p. 510.)

committed to the Youth Authority. This disparity continued until the enactment of section 1202b in 1959. (Stats. 1959, ch. 916, § 1, p. 2948.)

Although true "legislative history" is nonexistent, there is persuasive evidence that the purpose of section 1202b was to allow the sentencing judge to permit a young person, who prior to 1944 might have been committed to the Youth Authority, to be treated on a parity with persons still eligible for Youth Authority commitment with regard to parole eligibility and discharge. The 1944 amendments to the Youth Authority Act were part of the Prison Reorganization Act which reorganized the entire penal and correctional system of the state and established the Department of Corrections and Adult Authority. (Stats. 1944, Third Ex. Sess. ch. 2, p. 12.) The Youth Authority became a component part of the Department of Corrections (*id.*, ch. 4, p. 17), and Richard A. McGee was appointed as the first Director of Corrections, the chief administrative officer of the department, by then Governor Warren. Mr. McGee continued in that capacity until 1961 when he became Administrator of the California Youth and Adult Corrections Agency, which position he held in 1965, when he participated in the First Sentencing Institute for Superior Court Judges sponsored by the Judicial Council of California. He was, therefore, knowledgeable about both Youth Authority and Adult Authority practices. During a panel discussion of the Adult Authority's handling of persons sentenced under section 1202b, Mr. McGee noted the problem that had existed prior to its enactment in attempting to give similar treatment to youthful codefendants, one of whom had been committed to the Youth Authority. He explained: "I thought maybe a little comment on the history of Penal Code Section 1202b might be of interest. You get a good many cases committed to the Youth Authority who are under 21 years of age and very often, more often than you think perhaps, there are co-defendants who are just past 21. The Youth Authority case might be out on the street in 18 months while the one who is committed as an adult and who is just past 21 won't be eligible for parole until 20 months and would serve a minimum term of 5 years." (First Sentencing Institute for Superior Court Judges, 45 Cal.Rptr. Appen., at pp. 110-111.) It is manifest that if the purpose of the Legislature in enacting section 1202b was to permit youthful offenders ineligible for commitment to the Youth Authority to be considered for parole and discharge on the same basis as their slightly younger codefendants, that purpose would not be served by the interpretations sought by respondent and the dissent.

Nor is this insight into the purpose of section 1202b newly gained. Even before Mr. McGee's explanation of the section's purpose to the

judges attending the sentencing institute, in the first reported appellate decision construing the section, the Court of Appeal had recognized it. The Department of Corrections had interpreted the mandatory minimum terms prior to parole eligibility established by the Health and Safety Code for certain narcotics offenses as being specific provisions which took precedence over section 1202b. The Court of Appeal, in *In re Ward* (1964) 227 Cal.App.2d 369 [38 Cal.Rptr. 650], held, however, that section 1202b was a special act and was controlling. In so doing, the court noted that this construction was consistent with the purpose of the Legislature that "the indeterminate sentence law and the Youth Authority Act should be construed and applied to work together as complementary parts of a more enlightened penal system. (*People* v. *Ralph,* 24 Cal.2d 575, 580.)" (227 Cal.App.2d at p. 375; see also *People* v. *McCullin* (1971) 19 Cal.App.3d 795, 800 [97 Cal.Rptr. 107].)

In both of the cases in which this court has since had occasion to consider the applicability of section 1202b, we have recognized that once the sentencing judge has determined that the defendant is deserving of consideration as a youthful offender and has invoked section 1202b the minimum term of imprisonment may only be six months. In *People* v. *Hicks* (1971) 4 Cal.3d 757 [94 Cal.Rptr. 393, 484 P.2d 65], we held that when a defendant who had been convicted of robbery, as was petitioner here, and who had been found to have been "armed" with a firearm during the commission of that offense within the meaning of section 12022[8] was sentenced under section 1202b, the provisions of that section took precedence over the additional penalty provisions of section 12022. We stated that *"by invoking section 1202b the court impliedly declared sections 3024 and 12022 inapplicable to this defendant."* (4 Cal.3d at p. 765; italics added.) Inasmuch as the language of section 12022.5 is in all relevant aspects identical to that of section 12022, there is no basis upon which to distinguish the effect of applying section 1202b to a defendant found to have used a weapon under section 12022.5 from the effect of applying section 1202b to a person found to have been armed with a deadly weapon under section 12022. Certainly there is no indication that the Legislature intended a different result.

---

[8]Section 12022 provides: "Any person who commits or attempts to commit any felony within this state while armed with any of the deadly weapons, as defined by subdivision (f) of Section 3024, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor more than 10 years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

Indeed, the effect of invoking section 1202b in the case of a youthful offender found to have used a firearm was before this court in *People* v. *Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024].

Although in *Chambers* respondent did not suggest that any minimum term other than the six months expressly provided by section 1202b could be imposed by a court invoking that section in sentencing a youthful offender, and thus that question was not directly presented, *Chambers* is dispositive. In *Chambers,* as in *Hicks,* the court was called upon to determine the effect of invoking section 1202b. We held that when a trial court finds a defendant to be qualified for treatment as a youthful offender, and sentences him under section 1202b, "the youthful offender's sentence shall be a minimum of six months to the maximum set by law." (7 Cal.3d at p. 675.)

A trial judge has an obligation when sentencing a defendant meeting the criteria of section 1202b to determine whether there are factors which make the defendant deserving of treatment as a youthful offender. We emphasize that such treatment does not entitle the defendant to an earlier release on parole or discharge from custody than that otherwise applicable. Invoking section 1202b does no more than permit the Adult Authority to consider such release if, after observation and study of the defendant, the authority determines that his conduct and effort toward reformation confirm the sentencing court's tentative determination that he in fact deserves treatment comparable to that available to younger defendants committed to the Youth Authority. In making that initial judgment, the sentencing court should consider the defendant's background, the circumstances of his offense, his relationship to any other participants who may have been committed to the Youth Authority, and any indicia of potential for reformation prior to the time he would be eligible for parole and/or discharge if section 1202b were not invoked. If the sentencing judge does conclude that the defendant is deserving of treatment as a youthful offender, and invokes section 1202b, that determination is for all purposes and applies to all terms imposed in that proceeding.

Notwithstanding his own reservations, and circumstances which would have fully justified denying 1202b consideration, the judge here elected to invoke that section. The purported limitation of section 1202b to the robbery term being in excess of the court's power is of no effect and the Adult Authority is therefore directed to consider petitioner for term fixing and parole without regard thereto.

Inasmuch as petitioner is not now entitled to his release from custody, the order to show cause is discharged, and the petition for writ of habeas corpus denied.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I respectfully dissent and suggest that the majority err in two separate respects. First, they adopt a construction of Penal Code section 1202b which substantially restricts the discretion of the sentencing judge in dealing with youthful offenders, contrary to the probable legislative intent underlying the section. Second, they compound the error by extending the benefit of their construction of section 1202b to the petitioner notwithstanding the fact that the sentencing judge in very express terms declined to invoke that section to reduce petitioner's minimum sentence to a bare six months and instead, *at the urging of petitioner's counsel,* selected a minimum term of five and one-half years rather than the ten-year minimum otherwise prescribed by law. If, as the majority hold, the judge erred in assuming he had the authority under section 1202b to select a minimum term of five and one-half years, then either petitioner's sentence should be modified to a ten-year minimum, or else a new sentencing hearing should be held to determine whether or not a six months minimum term should be imposed under section 1202b, thereby preserving the sentencing court's discretion.

## 1. *Construction of Section 1202b*

Section 1202b provides that the sentencing judge ". . . may, . . . specify that the minimum term of imprisonment . . . shall be six months." The majority hold that the court lacked discretion under the section to impose an intermediate minimum term of five and one-half years for the underlying robbery augmented by the firearm-use finding under section 12022.5. In effect, the majority hold that the court had but two options under section 1202b: to sentence petitioner to the full minimum term of *ten years* (five years for the robbery, and five additional years for firearm use) or, alternatively by invoking section 1202b, to sentence petitioner to a *six months* minimum term, only, for these violations.

An alternative analysis of the language of section 1202b, assisted by an application of ordinary rules of statutory construction, discussed below, lead me to conclude that the section is reasonably susceptible of a different interpretation which is more consistent with the probable legislative intent underlying the section. Section 1202b expressly permits the sentencing court, in its discretion, to impose a minimum term of six months, a substantial reduction in the term otherwise prescribed by law. By necessary implication, the section being couched in discretionary language, the section empowers the court to impose a minimum term fixed cumulatively at some point between six months and the minimum provided by statute for the underlying offense or offense, as augmented by section 12022.5. It seems to me that section 1202b may quite readily be construed as vesting the court with discretion to select a minimum term for the offenses of *not less than* six months in duration.

In contending for their interpretation of section 1202b, the majority rely on *People* v. *Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024], which, as I will note, involved a somewhat different problem. In *Chambers,* the sentencing court invoked section 1202b and, in contrast to the present case, sentenced defendant to a minimum term of six months, notwithstanding his use of a firearm in connection with a robbery. We affirmed the judgment, rejecting the People's contention that the trial court lacked authority under section 1202b to mitigate or negate the sentencing augmentation of section 12022.5. We noted: "The discretion of the trial court to set a minimum term of imprisonment at six months for youthful offenders remains unimpaired notwithstanding the enactment of section 12022.5. Accordingly, when section 1202b is invoked, the youthful offender's sentence shall be a minimum of six months to the maximum set by law." (P. 675.) The majority cite this language in support of petitioner's contention that once the sentencing court has invoked section 1202b, its authority in all cases is limited to imposing a six months minimum term. However, that issue was not before us in *Chambers* and, accordingly, the language relied upon is dictum only.

As we noted in *Chambers, supra,* "Courts have consistently given a liberal interpretation to section 1202b," in order to serve its purpose of substituting the goal of rehabilitation for that of retributive punishment. (*People* v. *Chambers, supra,* 7 Cal.3d 666, at p. 674.) Thus, we must attempt to determine the probable legislative intent underlying section 1202b, given the rehabilitative goal sought to be achieved by adoption of that section.

In discovering legislative intent, I note initially that the decision to invoke section 1202b is left entirely to the discretion of the sentencing judge as expressed in the following language: ". . . [T]he court *may* . . . specify that the minimum term of imprisonment . . . shall be six months . . . ." (Italics added.) Further, the statute is generally expansive in scope, superseding any otherwise applicable penalty provision. For example, even in the case of multiple offenses, the sentencing court has discretion under section 1202b to impose a *cumulative* minimum term of six months. One salutary function of the sentencing court's utilization of section 1202b is to equalize the prison terms of minor defendants committed to the Youth Authority and of slightly older offenders who are imprisoned for the same offense. (*People* v. *McCullin* (1971) 19 Cal.App.3d 795, 800 [97 Cal.Rptr. 107].)

In enacting section 1202b the Legislature selected the category of youthful offenders for special sentencing treatment. In my view, the twin goals of rehabilitation and equality of treatment are more effectively promoted by a construction of section 1202b which permits courts a wider rather than a narrower range of sentencing discretion. Acceptance of the majority's construction would require the sentencing court to place every youthful offender in one of only two categories: those who merit only a six months minimum sentence and those who must receive instead the full minimum term otherwise prescribed by law. Such a rigid and fixed interpretation of section 1202b does not comport with sound sentencing policy, as the present case graphically demonstrates.

The record before us discloses that the sentencing judge, benefited by a probation report and his personal observations of petitioner, concluded that although *some* reduction in petitioner's minimum term was appropriate, a six months minimum term was far too short in view of petitioner's amply demonstrated dangerous propensities which I document below. Accordingly, the court chose the middle ground and imposed a minimum term of five and one-half years. This sentence (which, as we will note, was requested by petitioner's counsel) seems precisely the sort of discretionary determination which courts should be empowered to make in exercising their important sentencing function. (See *People* v. *Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481]; *People* v. *Moran* (1970) 1 Cal.3d 755, 762; *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 790-792 [21 Cal.Rptr. 826]; Witkin, Cal. Criminal Procedure (1963) § 614, pp. 605-606; Pen. Code, §§ 12, 13, 1168.) Had the Legislature intended to deprive courts of this reasonable

discretion to select an appropriate minimum term for youthful offenders under section 1202b, it could easily have so provided in express terms. It did not do so. Given the admonition of *Chambers* to construe section 1202b liberally with a view toward promoting its primary objective of rehabilitating youthful offenders, I would reject the majority's restrictive construction of the section.

The sentencing process invokes all of the judge's sensitivity, intuition, experience and common sense. To an unusual degree it demands qualities of the prophet and seer. It requires an appreciation of human nature and the motivation and weaknesses of mankind, and an ability to project human behavior amidst the variables of time, place and circumstance of the human condition. Finally, it requires a capacity for anticipation based upon the probables. In this most difficult area I think the Legislature intended for courts to possess wider rather than narrower discretion, thus permitting them to tailor and fashion the sentence in accordance with the best insight given to them.

Applying these principles to the case before us, and considering the language of section 1202b and its purposes, I conclude that the self-evident goals of the sentencing judge can and should be given effect. The record is abundantly clear that the court was moved by two considerations in the sentence imposed—a strong feeling that the offense committed was a serious crime, and a desire to extend some leniency, rather than to impose the full ten-year minimum term. The court properly noted these factors appearing in the record. The circumstances of the robbery disclose defendant to be unusually cold-blooded and the underlying offense might well have been a murder (the robbery victim was shot several times despite the fact that he had earlier refused to shoot petitioner when the latter had temporarily lost possession of his gun); petitioner had a serious narcotics problem; and, on another occasion, petitioner had fired a rifle into a crowd after a trivial argument over ownership of a screwdriver. The court observed: "I can't find any ray of light in this defendant's background . . . . [W]hen it comes to gambling on a situation where my mistake may mean somebody's life, I'm . . . hesitant [to exercise leniency] especially in a case such as this where the defendant has already demonstrated that he is not in the slightest going to hesitate to fill somebody full of lead." This statement and others in the record demonstrate most forcefully that the court never would have invoked section 1202b had his sentencing discretion for a first degree robbery conviction with a firearm use been automatically limited to a

mere six months. Neither of the two sentencing extremes—a six months minimum or ten years minimum—fit the court's considered judgment as to what was fair and proper. Its choice of a middle ground was well within its allowable discretion. Indeed, it is difficult to discern what serious rehabilitative goal would be served by imposition of a six months' minimum sentence on a defendant who, during the course of an armed robbery, fired several shots into his victim.

Limiting the sentencing court's freedom of choice to one extreme (six months) or the other (ten years), might very well drastically curtail the utilization of section 1202b, thus thwarting a valid legislative purpose in authorizing some degree of leniency. While it is true that the Adult Authority stands as a further safeguard against the premature release of a dangerous offender, we may not ignore the direct relationship between the sentence and action by the Adult Authority. The sentencing court might reasonably fear that the imposition of a mere six months minimum term would influence the Adult Authority's decision in fixing the offender's actual term. It has been observed that the court's invocation of section 1202b ". . . serves as a recommendation as well as an authorization to the parole board to give serious consideration to granting an early release on parole." (Cal. Criminal Law Practice (Cont.Ed.Bar 1969) § 23.58, at p. 516.) Further, the minimum term imposed will bear directly on the timing of the offender's eligibility for parole. (Pen. Code, § 3049.) Thus, the court, if denied reasonable discretion, might well conclude that the safest course under the circumstances would be to refuse altogether to invoke section 1202b, rather than risk the offender's premature release.

I note, in comparison, that a trial court's decision whether to grant probation, or to impose concurrent or consecutive sentences, are matters of broad discretion which will not be disturbed in the absence of a clear showing of abuse. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Ingram* (1969) 272 Cal.App.2d 435, 439-440 [77 Cal.Rptr. 423], app. dism. and cert. den. 396 U.S. 116 [24 L.Ed.2d 311, 90 S.Ct. 399]; see *People* v. *Rojas* (1963) 216 Cal.App.2d 819, 827-829 [31 Cal.Rptr. 417].) Reasonable flexibility and latitude in the reduction or mitigation of an offender's punishment is necessary. The sentencing court is in the best position to know the precise nature of the offense or offenses and, assessing the likelihood of the offender's prospective rehabilitation, to fashion an appropriate sentence. Similar considerations affect the court's sentencing function in the context of

sections 1202b and 12022.5 where the offender's youth and the use of a firearm combine to add complexity to the court's task.

The principal thesis of the majority is that section 1202b was enacted (1) to restore equality between those offenders and juvenile offenders committed to the California Youth Authority and (2) to give to the *Adult Authority* greater discretion over youthful offenders. Respectfully, it is suggested that the majority are manifestly wrong in both aspects of their argument. If equality of treatment were the sole or primary purpose of the section, it would have been served much more easily by the simple device of restoring to age 23 eligibility for admission to the Youth Authority, as was the case prior to the 1944 legislation referred to by the majority.

Furthermore, as is apparent from the very language of section 1202b, the Legislature vested *in the courts* (and *not* in the Adult or Youth Authorities) the power to decide whether to reduce the minimum term prescribed by law for youthful offenders. The majority concede, as they must, that the section empowered the courts to choose between a ten-year and a six months minimum sentence, a choice which will directly affect the term-fixing discretion of the Adult Authority. Since the courts hold discretionary authority over such a wide range of minimum sentences, it is wholly unreasonable to adopt a construction which denies courts authority to act within that wide range. Such a fixed and rigid interpretation would be not only wholly inconsistent with the well established principle of broad discretion vested in the sentencing judge (see Cal. Criminal Law Practice, *supra*, p. 134; Witkin, Cal. Criminal Procedure (1963) § 614, p. 606; *People* v. *Giminez, supra*, 14 Cal.3d 68, 72), but would perpetuate the anomolous result of permitting the judge to impose punishment at either of the extreme ends of the sentencing spectrum but deny him exercise of any informed judgment at any point in between. This cramping and confining judicial posture cannot have been legislatively intended for those charged by law with exercising the important and difficult sentencing function to which I have previously alluded.

In my view, the special considerations applicable to youthful offenders emphasize the need for a reasonable measure of sentencing discretion in the court. None of the various authorities cited by the majority, including *People* v. *Chambers, supra*, 7 Cal.3d 666, and *People* v. *Hicks* (1971) 4 Cal.3d 757 [94 Cal.Rptr. 393, 484 P.2d 65], are controlling, for none faced

the task of determining *how much* discretion section 1202b vests in the courts.

For all the foregoing reasons, I would conclude that section 1202b empowers the court, subject of course to appropriate appellate review, to sentence a youthful offender to *any* minimum term between six months and the minimum term prescribed for the offense or offenses of which he was convicted.

### 2. *Petitioner Invited the Error*

As previously noted, the sentencing judge made it quite clear at the sentencing hearing that he never would have invoked section 1202b had he understood that his sentencing discretion was limited to a choice between a six months minimum and the full ten-year minimum otherwise prescribed by law. According to the record, the judge was unable to find ". . . any ray of light in this defendant's background to afford any reasonable expectation that he is going to be anything but in trouble . . . ." Petitioner's counsel then explained that what he was ". . . asking for is the difference between five years and ten years, in view of his [petitioner's] age."

The sentencing judge inquired of counsel whether the six months minimum sentence under section 1202b would apply to the five-year minimum term prescribed for firearm use under section 12022.5. Petitioner's counsel replied that "The five years would be tacked on on top of that. [¶] In other words, 12022.5 says 'upon expiration or termination of the sentence imposed,' so if you impose six months, then he [petitioner] gets five years on top of that." Accordingly, the court sentenced petitioner to a term of from five years to life for first degree burglary, with the express proviso that ". . . in connection with that sentence only, the Court will impose the conditions of 1202b of the Penal Code, making the minimum sentence six months. However, the Court additionally imposes the five years provided for in 12022.5 and directs that the commitment specifically indicate that the Court's direction of invoking 1202b is not to apply to the conditions of section 12022.5 of the Penal Code."

The majority note that "The court would have been more than justified in refusing to invoke section 1202b at all . . . ." (*Ante*, p. 212.) They also concede that it "appears" that petitioner invited the court's

error in misconstruing the effect of section 1202b. Nevertheless, the majority conclude that since "[a] court is without authority to impose a sentence not prescribed by statute," (*ibid.*) the judgment is void to that extent.

To the contrary, I suggest that where, as here, the court has, at counsel's invitation, entered a defective judgment, the judgment should be set aside in its entirety, and one of two courses followed: (1) either direct entry of judgment in accordance with the probable intentions of the sentencing court (here, imposition of a ten-year minimum sentence), or (2) direct the court to resentence defendant in accordance with law (here, to choose between a six months or ten years minimum sentence). In an analogous situation, where the sentencing court has improperly considered an invalid prior conviction in fixing a defendant's sentence, we routinely have remanded defendant for resentencing, reconsideration of denial of probation, or redetermination of habitual criminal status. (See *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Caffey* (1968) 68 Cal.2d 762 [69 Cal.Rptr. 93, 441 P.2d 933]; *In re Huddleston* (1969) 71 Cal.2d 1031 [80 Cal.Rptr. 595, 458 P.2d 507].) Similarly, where the trial court has failed to exercise its discretion whether or not to strike a prior conviction, the cause is remanded to the court for reconsideration and resentencing (*People* v. *Tenorio* (1970) 3 Cal.3d 89, 95, fn. 2 [89 Cal.Rptr. 249, 473 P.2d 993].) Although such a remand probably would be unnecessary in this case, since the judge made it clear *on the record* that he would under no circumstances impose a mere six months minimum sentence (see *In re Huddleston, supra,* at pp. 1037-1038), it is, to me, wholly unreasonable that petitioner should gain the benefit of his own invited error and at the same time defeat the sentencing judge's ability to reconsider the sentence in the light of the majority's interpretation of section 1202b.

McComb, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied November 24, 1976. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.