Filed 8/23/21  P. v. McDonald CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C090926 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFER20190005600) |
| v. | |
| ANTHONY DONTAY MCDONALD, | |
| Defendant and Appellant. | |

Defendant Anthony Dontay McDonald entered a negotiated plea, in which he pled no contest to the sale or transportation of cocaine and admitted he had two prior prison terms within the meaning of Penal Code[1] section 667.5, subdivision (b).  In exchange, the prosecution dismissed the charge of possession for sale of cocaine and all other enhancements.  The trial court sentenced defendant to the stipulated prison term of five

---

[1] All further section references are to the Penal Code unless otherwise specified.

1

years, which consisted of the low term of three years for the sale or transportation of cocaine plus one year for each of the prior prison term enhancements.

Defendant advances two arguments on appeal. First, defendant contends, and the People agree, that the two one-year prior prison term enhancements must be stricken because of recently adopted Senate Bill No. 136 (2019-2020 Reg. Sess.). The parties, however, dispute the proper remedy in that regard. Specifically, defendant argues the enhancements may be stricken on appeal while keeping the remainder of the plea agreement intact; whereas, the People argue the case must be remanded to permit the prosecution to either accept the reduced sentence or withdraw from the plea agreement, relying on *People v. Stamps* (2020) 9 Cal.5th 685. Second, defendant contends, and the People again agree, that the narcotics registration requirement should be stricken from the abstract of judgment because the Legislature repealed Health and Safety Code section 11590.

The parties correctly observe the narcotics offender registration requirement must be stricken. The parties further appropriately agree the two one-year enhancements must be stricken because Senate Bill No. 136 retroactively modified the plea agreement. As to the remedy in that regard, *Stamps* is inapplicable. In the absence of controlling Supreme Court precedent and under the circumstances of this case, the appropriate remedy is to strike the enhancements on appeal.

DISCUSSION

The substantive facts underlying defendant's conviction are not relevant to the issues raised on appeal and are not recounted here.

I

*The Narcotics Offender Registration Requirement Must Be Stricken*

Defendant and the People agree defendant's narcotics offender registration requirement should be stricken because the Legislature repealed Health and Safety Code section 11590, which required persons convicted of certain offenses involving controlled

2

substances to register as narcotics offenders with the local law enforcement agency. (Stats. 2019, ch. 580, § 2.)  The repeal became effective on January 1, 2020, while defendant's case was still pending and not yet final.  The parties are correct.

In *Estrada*, our Supreme Court addressed the retroactive application of a criminal statute amended to mitigate the punishment for a proscribed act prior to final judgment in a defendant's case.  (*In re Estrada* (1965) 63 Cal.2d 740, 742.)  "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final."  (*Id.* at p. 745.)  Our Supreme Court relied on the common law rule that, "when the old law in effect when the act is committed is repealed, and there is no saving clause, all prosecutions not reduced to final judgment are barred." (*Id.* at pp. 746-747.)  Our Supreme Court recently affirmed the *Estrada* rule.  (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299; *People v. Frahs* (2020) 9 Cal.5th 618.)

The repeal of Health and Safety Code section 11590 served to eliminate a burden that narcotics offenders once shouldered.  In accordance with *Estrada*, the narcotics offender registration requirement must be stricken.

## II

### *Senate Bill No. 136*

Signed by the Governor on October 8, 2019, and effective January 1, 2020, Senate Bill No. 136 amends section 667.5, subdivision (b) to eliminate the one-year prior prison term enhancement for most prior convictions.  (Stats. 2019, ch. 590, § 1.)  An exception,

not applicable here, is made for a qualifying prior conviction of a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b).

Defendant argues Senate Bill No. 136 applies retroactively to him and, because the trial court would exercise no discretion on remand, it is appropriate for this court to strike the prior prison term enhancements on appeal. The People agree Senate Bill No. 136 applies retroactively but assert the proper remedy is to remand for the trial court to strike the enhancements and allow the prosecution to either accept the lower sentence or withdraw from the plea agreement because Senate Bill No. 136 "was intended to ameliorate punishment for a particular enhancement provision, and neither its text nor its legislative history addresses plea bargaining." (Citing *People v. Stamps*, *supra*, 9 Cal.5th at p. 685.)

The parties correctly observe Senate Bill No. 136 applies retroactively to defendant. As to the remedy, we agree with defendant that it is appropriate in this case to strike the enhancements on appeal. Admittedly, our appellate courts are once again vexed by the remedy arising from the application of retroactive ameliorative legislation to plea agreements following the enactment of Senate Bill No. 136 -- specifically, as to stipulated sentences when a portion of those sentences must be stricken. (See, e.g., *People v. France* (2020) 58 Cal.App.5th 714, review granted Feb. 24, 2021, S266771 [appellate court striking unauthorized prior prison term enhancement; prosecution may not withdraw from plea agreement]; *People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted Jan. 27, 2021, S265739 [allowing the People to withdraw from plea agreement when prior prison term enhancement is stricken; no cap as to any subsequent sentence]; *People v. Joaquin* (2020) 58 Cal.App.5th 173, review granted Feb. 24, 2021, S266594 [Senate Bill No. 136 renders plea agreement unenforceable; "[o]n remand, the parties may enter into a new plea agreement, but, if they do, the trial court may not impose a longer sentence than that in the original agreement"].) Our Supreme Court is

now poised to provide clarification.  In the meantime, we believe it is appropriate to strike the enhancements at issue here.

A

*Senate Bill No. 136 Applies Retroactively*

As this court explained in *Andahl*, Senate Bill No. 136 applies retroactively. (*People v. Andahl* (2021) 62 Cal.App.5th 203, review granted June 16, 2021, S268336.) Because Senate Bill No. 136 is now effective and defendant's judgment is not yet final, the amended law applies retroactively to him.  (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when statute takes effect]; see *People v. Buycks* (2018) 5 Cal.5th 857, 882 [" 'The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses' "].)

B

*Stamps Does Not Apply And The Unauthorized Enhancements Are Stricken*

In *Stamps*, the defendant "was charged with three counts of first degree burglary [citations].  The complaint also alleged two prior first degree burglary convictions as serious felonies under the 'Three Strikes' law and the serious felony enhancement provision.  Three state prison prior convictions were also alleged.  [Citation.]  Had defendant been convicted of all counts and enhancements, he would have been subject to the 25-year-to-life provisions of the Three Strikes law [citation] along with any applicable fixed-term enhancements.

"In November 2017, pursuant to negotiation, defendant pled to one first degree burglary and admitted one serious felony conviction in exchange for a nine-year prison sentence, based on the low term for burglary (two years), doubled under the Three Strikes law [citation], plus five years for the serious felony enhancement.  All remaining counts and allegations were dismissed on motion of the district attorney as part of the plea agreement.  Defendant was sentenced in January 2018, subsequently filed a notice of

5

appeal, and sought a certificate of probable cause [citations], which the trial court denied." (*People v. Stamps*, *supra*, 9 Cal.5th at p. 693, fn. omitted.)

The Governor approved Senate Bill No. 1393 (2017-2018 Reg. Sess.) on September 30, 2018, allowing a trial court to dismiss a serious felony enhancement in furtherance of justice, as provided under section 1385. Because his judgment was not yet final, the defendant argued on appeal that the legislation entitled him to remand for the trial court to exercise its discretion whether to strike the serious felony enhancement; defendant argued the plea agreement otherwise had to remain intact. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 693.) Our Supreme Court disagreed with the defendant's proposed remedy.

Our Supreme Court's analysis turned on whether, by enacting Senate Bill No. 1393, *the Legislature intended to overturn long-standing law preventing a trial court from unilaterally modifying an agreed-upon term of a plea agreement by using its discretion to strike enhancements*. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 701.) The court explained that, "[e]ven when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term." (*Id*. at p. 700.) After considering the legislative history, our Supreme Court concluded "[t]he Legislature may have intended to modify the sentencing scheme, but the legislative history does *not* demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement." (*Id*. at p. 702.)

The court explained that "Senate Bill [No.] 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements. Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision. Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the

6

modification." (*People v. Stamps*, *supra*, 9 Cal.5th at p. 702.) Indeed, it reasoned, "to allow the court to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement. That Senate Bill [No.] 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Id*. at p. 704.)

Our Supreme Court concluded the appropriate remedy was to remand the matter to allow the defendant an opportunity to seek relief under Senate Bill No. 1393, with the understanding that the People would be allowed to withdraw from the plea bargain if the trial court indicated its inclination to exercise its discretion to strike the enhancement. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 707.) The court reiterated this remedy was appropriate because "the court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain." (*Ibid*.)

Two critical differences between Senate Bill No. 136 and Senate Bill No. 1393 are *the identity of the decision maker and the effect of the legislation*. Under Senate Bill No. 1393, the trial court is the decision maker, exercising its discretion to determine whether to strike the serious felony enhancement.[2] An exercise of such discretion,

---

[2] Notably, the same is true of the trial court's role under Proposition 47, as considered in *Harris*, although certainly the scope of the trial court's discretion is different. (*Harris v. Superior Court* (2016) 1 Cal.5th 984.) Section 1170.18, subdivision (b), which was added to the Penal Code via Proposition 47 (*Harris*, at p. 989), "provides that a person meeting the requirements of subdivision (a) . . . 'shall' be resentenced 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety' " (*Harris*, at pp. 991-992).

however, is incompatible with plea agreements, as our Supreme Court explained, because long-standing law precludes the trial court from unilaterally modifying the terms of a plea agreement and the statutory scheme and legislative history of Senate Bill No. 1393 indicate no intent to overturn *such established law*. In contrast, in Senate Bill No. 136, *the Legislature is the decision maker*; the Legislature has declared that those who served a prior prison term for offenses other than certain sexually violent offenses *shall* no longer be subject to the prior prison term enhancement under section 667.5, subdivision (b).[3] Nothing in our existing law precludes the Legislature from modifying plea agreements. In fact, the law provides for the exact opposite. First, "[s]ubject to the constitutional prohibition of cruel and unusual punishment, the Legislature may define and punish offenses as it sees fit." (*People v. Knowles* (1950) 35 Cal.2d 175, 181.) Second, "the general rule in California is that a plea agreement is ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." ' " (*Doe v. Harris* (2013) 57 Cal.4th 64, 73.) The Legislature may thus bind the People to a unilateral change in a sentence without affording them the option to rescind

---

Thus, the ultimate decision maker under Proposition 47 is also the trial court, although it must act within the confines of the legislation enacted by the electorate.

**3** According to the March 26, 2019, report for the Senate Committee on Public Safety, the prior prison term enhancement under section 667.5, subdivision (b), was a major driver of prison and jail populations and associated costs to taxpayers. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) as introduced Jan. 15, 2019, p. 1.) The report states, "[t]he imposition of this enhancement is ineffective in protecting public safety, is wasteful of public resources, and is damaging to the families and communities that disproportionately suffer from these long sentences." (*Id.* at p. 2.) The report further states, "[r]epealing ineffective sentencing enhancements [like the prior prison term enhancement] [would] save hundreds of millions of dollars, reduce prison and jail populations, mitigate racial and gender disparities in incarceration, and end the double punishment for prior convictions." (*Id.* at p. 3.)

8

the plea agreement. (See *Harris v. Superior Court*, *supra*, 1 Cal.5th at p. 992 [same as to electorate].)

By giving effect to Senate Bill No. 136 and striking the unauthorized sentence, the court does not make a unilateral change to the stipulated sentence of the plea bargain in contravention of section 1192.5. *The court merely acts as the vessel through which the Legislature accomplishes and effects its directive. The court's action in that regard is based on long-standing law.*

The practical effect of Senate Bill No. 136 is to retroactively render defendant's one-year enhancements under section 667, subdivision (b) an unauthorized sentence because it is a sentence that "could not lawfully be imposed under any circumstance" in this nonfinal case. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Just as a "conviction cannot stand on appeal when it rests upon conduct that is no longer sanctioned" (*People v. Collins* (1978) 21 Cal.3d 208, 214), neither can a sustained allegation based on a currently inapplicable enhancement allegation. The enhancement must, therefore, be stricken. (*In re Andrews* (1976) 18 Cal.3d 208, 212 ["A court is without authority to impose a sentence not prescribed by statute"]; *People v. Harvey* (1980) 112 Cal.App.3d 132, 139 ["in computing one's sentence under a plea bargain, even though agreed to by the parties, the court may not give effect to an enhancement unauthorized by law"]; *People v. Jackson* (1981) 121 Cal.App.3d 862, 869 [court cannot give effect to an agreed-upon sentence if it is not authorized by law].)

The Legislature is presumed to know that Senate Bill No. 136 applies retroactively to cases not yet final and a court must strike an enhancement unauthorized by law. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839 [it is a generally accepted principle that in adopting legislation the Legislature is presumed to know existing law].) More specifically, the Legislature is presumed to know that: (1) Senate Bill No. 136 retroactively renders sentences in nonfinal cases unauthorized; and (2) courts must strike an unauthorized sentence, even with respect to plea agreements (e.g., *People v. Harvey*,

9

*supra*, 112 Cal.App.3d at p. 139 ["in computing one's sentence under a plea bargain, even though agreed to by the parties, the court may not give effect to an enhancement unauthorized by law"]; *People v. Collins*, *supra*, 21 Cal.3d at pp. 211-212). Thus, in considering the question of legislative intent -- i.e., whether the Legislature intended the change in the law to apply to plea agreements (*Doe v. Harris*, *supra*, 57 Cal.4th at pp. 66, 73) -- it seems logical that, because " 'the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended [Senate Bill No. 136] in the light of such decisions as have a direct bearing upon [the statute]' " (*Estate of McDill*, at p. 839), the Legislature intended for the unauthorized sentence created by Senate Bill No. 136 to apply to plea agreements within the meaning of *Doe*, unless otherwise expressed. Neither the statutory scheme nor the legislative history shows an intent to overturn existing law that the unauthorized sentence doctrine applies to plea agreements.

The natural next question is, what does that mean? *Harris* provides the answer. If the Legislature intended for legislation to apply to plea agreements, as stated in *Doe*, and the change in the law reduces the sentence in the plea agreement, the Legislature "bind[s] the People to a unilateral change in [the] sentence without affording them the option to rescind the plea agreement." (*Harris v. Superior Court*, *supra*, 1 Cal.5th at pp. 991-992.) The *Stamps* remedy is thus wholly inapplicable to Senate Bill No. 136.

In addition to being inapplicable, the *Stamps* remedy is also incompatible with Senate Bill No. 136 from a practical perspective. The *Stamps* remedy allows a limited remand to give a defendant the *opportunity and choice* to seek relief under Senate Bill No. 1393 for the trial court to exercise its newly minted discretion. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 707.) But, here, defendant has no *choice* in whether he seeks relief under Senate Bill No. 136; the court *must* strike the one-year enhancements because they constitute an unauthorized sentence. Because of this, application of the *Stamps* remedy to a statute like Senate Bill No. 136 results in a scheme where, if the Legislature

10

retroactively unauthorizes a sentence in a plea agreement in a case not yet final, the prosecution will *always* be entitled to withdraw from the plea agreement when the court acts in accordance with the legislative mandate. *Stamps* did not contemplate such a sweeping result, especially when considering judgments based on plea agreements "represent the vast majority of felony and misdemeanor dispositions in criminal cases," with statistics indicating that less than 5 percent of felony cases are disposed of through felony convictions resulting from a court or jury trial. (*In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5.)

It appears that, rather than comporting with *Stamps* (a case not addressing an unauthorized sentence), application of the *Stamps* remedy to Senate Bill No. 136 stipulated sentence cases would unwittingly and unintentionally *in practice* result in a modified and expanded version of the remedy discussed in *Collins* (a case addressing an unauthorized sentence). In *Harris*, our Supreme Court summarized *Collins* as follows: "In *Collins* . . . , the defendant was charged with 15 felonies, including burglary, attempted burglary, forcible rape, assault with intent to commit rape, and forcible oral copulation. 'Pursuant to a plea bargain, defendant entered a plea of guilty to one count of oral copulation; in return, the allegations of commission of that crime by means of force and of a prior felony conviction were stricken, and the other 14 counts were dismissed.' [Citation.] After the plea, the Legislature decriminalized nonforcible oral copulation, the crime to which the defendant had pleaded guilty. Nevertheless, the trial court sentenced him to state prison. On appeal, because the conduct to which the defendant pleaded guilty was no longer criminal, this court reversed the conviction. [Citation.] As we summarized, 'A conviction cannot stand on appeal when it rests upon conduct that is no longer sanctioned.' [Citation.]

"We then considered the effect of the reversal on the dismissed counts. We stated the issue as being 'whether the prosecution has been deprived of the benefit of its bargain by the relief granted herein. We conclude that it has and hence the dismissed counts may

11

be restored. [¶] The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. . . . When a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it is his escape from vulnerability to sentence that fundamentally alters the character of the bargain.

" 'Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain -- that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.' [Citation.]

"Regarding remedy, we concluded that the state could revive one or more of the dismissed counts, but the defendant could not receive a more severe punishment than that to which the plea agreement had subjected him." (*Harris v. Superior Court*, *supra*, 1 Cal.5th at pp. 989-990.)

Like in *Collins*, the unauthorized sentence here must be stricken; the court has no discretion to enforce the plea agreement under its pre-Senate Bill No. 136 terms. Unlike in *Collins*, however, the retroactive application of Senate Bill No. 136 does not eviscerate the plea agreement and deprive the prosecution of its bargain as to defendant's vulnerability to sentence. Yet, if the *Stamps* remedy is applied to Senate Bill No. 136 stipulated sentence cases, the net result is the same as in *Collins* in that the prosecution may withdraw from the plea agreement and reinstate all charges on remand. Our Supreme Court has not expanded the remedy discussed in *Collins* to such circumstances.

In short, based on the foregoing, by enacting Senate Bill No. 136, the Legislature unilaterally modified the parties' plea agreement without affording the prosecution the option to rescind the plea agreement. Because the retroactive application of Senate Bill No. 136 does not eviscerate the plea agreement in this case, we will strike the two one-year enhancements and remand with an order to the trial court to prepare a corrected abstract of judgment.

## DISPOSITION

The narcotics offender registration requirement and the two one-year enhancements imposed under section 667.5, subdivision (b) are stricken. The trial court is directed to correct the abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


/s/
Robie, Acting P. J.



I concur:


/s/
Renner, J


13

MURRAY, J., Dissenting.

When a trial court accepts a negotiated resolution to a case and imposes the sentence agreed upon by the parties, it exercises discretion. In the exercise of that discretion, a trial court must consider whether the proposed resolution is " 'in furtherance of the best interest of society.' " (*People v. Stamps* (2020) 9 Cal.5th 685, 706 (*Stamps*)). Here, the trial court dismissed a felony count, a strike, and an enhancement consistent with the resolution negotiated by the parties. In doing so, it impliedly concluded that the five-year sentence it imposed furthered the best interest of society. But now, the majority effectively resentences defendant on its own, depriving the trial court of its discretion in determining whether the reduced sentence is still in the best interest of society. Nothing in Senate Bill No. 136 (2019-2020 Reg. Sess.) (S.B. 136) suggests this result was contemplated by the Legislature. Consequently, while I concur in part I of the majority opinion, I respectfully dissent as to part II.

I do agree with the majority on one thing it said in part II. Regarding retroactive application of S.B. 136, "our appellate courts are once again vexed by the remedy arising from the application of retroactive ameliorative legislation." (Maj. opn., *ante,* at p. 4.) These issues need not be addressed by appellate court litigation if the Legislature expressly states whether the sentencing reforms it enacts are to be given retroactive application or not, and if so, whether retroactive application applies to negotiated sentences or not.[4] Since that did not happen in S.B. 136, the appellate courts are tasked with providing the answer to a question that need not have been asked. As the split of

---

[4] I agree with the majority in *People v. Griffin* (2020) 57 Cal.App.5th 1088 (*Griffin*), to the extent that they "urge[d] the Legislature to clarify its intent on how its differing sentencing reform measures should be applied," (*id.* at p. 1099, fn. 7), at least going forward in the future. And if it is the Legislature's intent is to apply S.B. 136 retroactively to all plea-bargained sentences, it could enact a law saying as much, which would then make existing sentences statutorily unauthorized and require resentencing.

1

authority among the districts indicates, the answer is not an easy one. Nevertheless, in my view, the answer is not one that deprives the trial court of the discretion to withdraw consent to a plea agreement after circumstances changed with the enactment of S.B. 136.

Thus, in my view, remand is required to allow the court to determine whether the reduced sentence, given the totality of the circumstances present at sentencing, is in the furtherance of the interests of society or not. If it concludes it is not, then in the exercise of its discretion, the court should be permitted to withdraw its approval of the plea agreement. If, on the other hand, it determines that a three-year sentence is in the interests of society, then the prosecution should have the opportunity to withdraw its consent from the previously negotiated agreement. Either way, the discretionary decision the trial court must make in this setting is no different than the discretionary decision discussed in *Stamps*.

## I. Factual and Procedural Background

Defendant was charged with sale of a controlled substance (Health & Saf. Code § 11352 (count one)) and possession of a controlled substance for sale (Health & Saf. Code § 11351 (count two)). It was further alleged that defendant committed each offense while on bail. (Pen. Code § 12022.1)[5] Also, as to each count, three prior prison term enhancements were alleged. (§ 667.5, former subd. (b).) And, as to each count, it was alleged that defendant had a prior strike conviction for a violation of section 245, subdivision (a)(2). An on-bail enhancement was also alleged. (§ 12022.1) By my

---

[5] Undesignated statutory references are to the Penal Code.

2

calculation, defendant's maximum exposure was 13 to 14 years in state prison, depending on whether a consecutive sentence was barred on count two by section 654.[6]

Pursuant to a negotiated resolution, defendant entered a pre-preliminary hearing plea agreement where he pleaded no contest to count one, sale of a controlled substance, and admitted two prison priors. In exchange for his plea, count two, the strike allegation, and bail enhancement were dismissed, and defendant accepted a five-year prison sentence consisting of a three-year low term sentence on count one and one year for each of the prior prison term enhancements.

## II. Discussion

I agree defendant is entitled to have his section 667.5, former subdivision (b) sentences dismissed based on S.B. 136 and *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). That much is clear.

As to remedy, I fundamentally agree with the application of the remedy in *Stamps, supra*, 9 Cal.5th at pages 705-709 as discussed in *People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*). Based on *Stamps*, the *Hernandez* court remanded the matter to the trial court with the direction that the trial court could withdraw its prior approval of the plea agreement and so too could the prosecution. (*Hernandez*, at p. 944; see also *People v. Barton* (2020) 52 Cal.App.5th 1145 (*Barton*) [applying the same remedy in the context of Assembly Bill No. 1618, which eliminated prior drug trafficking

---

[6] In the factual basis for the plea, the prosecutor said police observed defendant making a hand-to-hand sale. When he was arrested, he still had 5.59 grams of cocaine on his person. If a consecutive sentence is not barred by section 654 (and it seems that it may not be based on the factual basis offered by the prosecution which indicated defendant still had plenty of product available to sell), defendant was exposed to a 14-year sentence calculated as follows: Upper term of 5 years count one, 1 year consecutive on count two (one-third the midterm), doubled for the strike to 12 years, plus 2 years for the on-bail enhancement. If section 654 applies to count two, then defendant's maximum exposure was 13 years.

enhancement sentences].)  As the *Hernandez* court recognized, " '[T]he process of plea negotiation "contemplates an agreement negotiated by the People and the defendant and approved by the court.  [Citations.]  . . .  Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution." ' " (*Hernandez*, at p. 948, quoting *People v. Segura* (2008) 44 Cal.4th 921, 929-930.)

The *Hernandez* court went on to note that *Stamps* examined the legislative intent behind the bill at issue there, Senate Bill No. 1393 (2017-2018 Reg. Sess.) (S.B. 1393) (allowing sentencing courts discretion to strike or dismiss serious felony conviction enhancements under section 1385), and noted that *Stamps* stated:  " 'none of the legislative history materials mention plea agreements *at all*.' " (*Hernandez*, *supra*, 55 Cal.App.5th at p. 953, quoting *Stamps*, *supra*, 9 Cal.5th at p. 702.)  The *Hernandez* court emphasized the observation in *Stamps*:  " '[t]hat [S.B.]1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements*.' " (*Hernandez*, at p. 954, quoting *Stamps*, at p. 704.)  The same holds true for prison prior enhancements eliminated in S.B. 136.  The bill and legislative history are silent concerning plea bargained sentences.[7]

---

[7] See the pertinent discussion of the legislative purpose in the maj. opn., *ante,* at p. 8, fn. 3.  That purpose focused only on punishment related to the prison prior enhancement.  It did not include punishment as to offenses, strikes, or other enhancements that are dismissed as part of a plea agreement.  For this reason, and others I will discuss further *post*, I disagree with the courts that find the legislative purpose supports a sentencing cap on remand.  (See *People v. Joaquin* (2021) 58 Cal.App.5th 173, 178 (*Joaquin*); *Griffin, supra,* 57 Cal.App.5th at pp. 1095-1096, 1097.)  In S.B. 136, the Legislature did not seek to affect sentences other than the one-year sentences previously authorized for prison prior enhancements.

Like the majority here, the defendant in *Hernandez* argued that S.B. 1393 and S.B. 136 are different, and the *Stamps* remedy should not apply in the context of S.B. 136, because S.B. 1393 provided new discretion to trial courts to strike or dismiss serious felony convictions, whereas S.B. 136 requires no exercise of discretion because it eliminated the punishment for prior prison terms.  (*Hernandez, supra*, 55 Cal.App.5th at p. 957.)  The *Hernandez* court responded:  "Such a distinction is not the dispositive issue in this case."  (*Ibid*.)  It noted that both *Stamps*, and another case upon which the majority here relies, *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*),[8] "focused on the history of the [statutory] amendments to determine whether there was any intent to 'to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification' to determine whether the district attorney can withdraw from the plea agreement."  (*Hernandez*, at p. 957.)  I agree with this observation as far as it goes, but it does not fully address the argument that S.B. 1393 and S.B. 136 are different.  What is missing is a recognition of the trial court's sentencing discretion and discretion to withdraw consent from plea agreements.

Not only did the Legislature display no intent to change the law regarding trial courts lacking discretion to unilaterally modify plea agreements, there is also nothing in S.B. 136 establishing an intent to deprive trial courts of the ability to withdraw consent from plea agreements – judicial authority that is also the product of long-standing law.  Section 1192.5, the very provision the *Stamps* court sought to harmonize in establishing its remedy, gives the sentencing court the discretion to withdraw consent from a plea agreement.  The *Stamps* court was careful to point this out.  (See *Stamps*, *supra*, 9 Cal.5th

---

[8]  In *Harris, supra,* 1 Cal.5th 984, our high court rejected the Attorney General's argument that Proposition 47 could not be applied to sentences resulting from plea agreements.  The court concluded that statutory language in Proposition 47—"whether by trial or plea"—indicated the electorate intended to include within its scope sentences that were the result of negotiated agreements.  (*Id*. at pp. 989-993.)

at p. 708.)  As our high court observed, another panel of this court previously provided a list of the circumstances that might justify a trial court's withdrawal of consent.  " 'Generally, a trial court may exercise its discretion to withdraw approval of a plea bargain because:  (1) it believes the agreement is "unfair" [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after further consideration, *the court concludes that the agreement is " ' "not in the best interests of society" ' "* [citation].  But this list is not exhaustive.' " (*Stamps*, at p. 706, quoting *People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 595-596 (*Mora-Duran*), italics added.)

A trial court's discretion in this regard is critical to the administration of justice. As the court in *Stamps* noted:  "In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes.  [Citation.]  For that reason, *a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society . . . .*" (*Stamps, supra*, 9 Cal.5th at p. 706, italics added.)  Thus, every time a trial court approves of a negotiated resolution, it impliedly determines the agreement is in furtherance of the interests of society in the locale where that court sits.

Our high court in *Stamps* also made clear that trial "courts have broad discretion to withdraw their approval of negotiated pleas." (*Stamps*, *supra*, 9 Cal.5th at p. 706.) Indeed, "[t]he court's authority to withdraw its approval of a plea agreement has been described as 'near-plenary.' " (*Id*. at p. 708, citing *Mora-Duran*, *supra*, 45 Cal.App.5th at p. 595; *People v. Stringham* (1988) 206 Cal.App.3d 184, 195.)  Here, while S.B. 136 applies retroactively, there is nothing in the bill that suggests resentencings by the trial court during which the court would have the opportunity to exercise this long-standing discretion have been eliminated.  Despite this, the majority skips that step by simply

6

ordering the enhancements stricken. (Maj. opn., *ante,* at p. 13.) In doing so, the majority has effectively "whittle[d] down" defendant's sentence and otherwise left his plea bargain intact without allowing the trial court to exercise its discretion to determine whether the reduced sentence furthers the interests of society in the county where the court sits and withdraw its consent to the agreement upon a determination it does not— something it appears our high court in *Stamps* sought to avoid. (*Stamps*, at p. 706.)

This case should be remanded for resentencing. At that time, the trial court could very well conclude that the plea agreement, sans the two years for the prison priors, is no longer in the interests of society given defendant's status as a recidivist, his commission of the instant offense while on bail, and other aspects of his criminal history not otherwise disclosed in the record before us. Should the court withdraw its consent, it must then "restore the parties to the status quo ante." (*Stamps*, *supra*, 9 Cal.5th at pp. 706-707.) In this context, "ante" must mean before the plea, meaning defendant would then be exposed to a sentence that involves the count, strike, and bail enhancement that were dismissed.

I must note that I am not in complete agreement with the *Hernandez* remedy. The *Hernandez* court concluded that it was necessary to dismiss the prison prior enhancements on remand and then the court and prosecution may choose to withdraw consent to the original plea agreement. (*Hernandez*, 55 Cal.App.5th at pp. 944, 960.) I agree that, in the event the trial court determines the reduced sentence remains in the interests of society and does not withdraw its consent, the prosecution may withdraw its consent. But I depart from *Hernandez* to the extent it held the prison priors must be automatically dismissed on remand. For the same reason, I disagree with the majority's conclusion that the sentences defendant is serving for the two prison priors became automatically unauthorized after S.B. 136. (See maj. opn., *ante,* at p. 9, citing *People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).)

7

I see it differently. "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*Scott*, *supra*, 9 Cal.4th at p. 354.) This definition of unauthorized necessarily looks back to the original imposition of the sentence. Here, defendant's sentence was authorized when it was imposed. And, but for his appeal seeking *Estrada* relief, he would still be serving that authorized sentence and this case would not be before us. Thus, the sentence of a person in defendant's position remains authorized if he or she wants to preserve the benefit of the original bargain instead of facing increased exposure should the court or prosecution withdraw consent from the original agreement.[9] But if a defendant insists on S.B. 136 relief, a resentencing must take place at which the prison prior sentences would no longer be part of the defendant's sentencing exposure but sentences related to dismissed charges and allegations could.

This approach is consistent with *Stamps*, which emphasized that it was the *defendant's choice* whether to continue to seek relief under S.B. 1393 on remand, given that the trial court or prosecution might withdraw their consent. (*Stamps*, *supra*, 9 Cal.5th at p. 708.) The court explained: " 'we anticipate that there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination, however, lies in each instance with the defendant.' " (*Ibid*.) The court continued: "While it is true that defendant has consistently argued on appeal that [S.B.] 1393 should retroactively apply to him, his argument has always been coupled with his

---

[9] For the same reason, I disagree with those courts that conclude the original agreement is unenforceable. (*Joaquin, supra*, 58 Cal.App.5th at p. 175; *Griffin, supra,* 57 Cal.App.5th at p. 1092; *Barton, supra,* 52 Cal.App.5th at pp. 1155, 1159.) I see the original agreement as voidable by defendant, not void. But as I explain *post*, either way it has no impact on the trial court's discretion to accept or withdraw consent from the original agreement on remand.

claim that the proper remedy should be to simply allow the trial court to reduce his sentence by five years while otherwise maintaining the remainder of the plea agreement. Now that we have rejected his proposed remedy, defendant's calculus in seeking relief under [S.B.] 1393 may have changed. Defendant should be allowed to make an informed decision whether to seek relief on remand." (*Ibid*.) Here, too, defendant's calculus may change if this matter were appropriately remanded for resentencing and the trial court or prosecution then withdraw their consent.

Some courts have observed that our high court in *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*), capped the defendant's potential sentencing exposure on remand to the aggregate term originally bargained for. (See *Joaquin*, *supra*, 58 Cal.App.5th at p. 178 [agreeing with the remedy in *Hernandez* except requiring a cap]; *Griffin, supra,* 57 Cal.App.5th at p. 1097 [same]; *People v. France* (2020) 58 Cal.App.5th 714, 720, 730, fn. 7 [disagreeing with the remedy in *Hernandez*].) In *Collins*, the Legislature decriminalized the offense to which the defendant pleaded in exchange for the dismissal of numerous other counts that remained viable. The court held that remand was appropriate to allow the prosecution to proceed on those other counts, but capped the defendant's sentencing exposure to the amount of time he originally agreed to. (*Collins*, at pp. 211-212, 215 [noting that to simply dismiss the case would result in a "bounty in excess of that to which [the defendant] is entitled"].) The majority relies on *Collins* to support its reasoning. (Maj. opn., *ante*, at pp. 11-13.) However, three circumstances lead me to believe that *Stamps* has impliedly abrogated the *Collins* remedy: (1) the *Stamps* court recognized that the status quo ante must be restored when a trial court withdraws consent, and in my view, putting a defendant in a position where he or she is exposed to no more time than was received as part of the negotiated resolution does not return the parties to the status quo before the agreement; (2) *Stamps* allows a defendant to make an informed decision on remand about seeking the ameliorative relief of a new enactment to avoid additional sentence exposure; and (3) the *Stamps* court imposed no sentencing cap

9

on remand and never even mentioned the *Collins* cap.[10]  Indeed, in my view, the fact the

*Collins* cap was not mentioned in *Stamps* speaks volumes.  (See *Hernandez*, *supra*, 55

Cal.App.5th at p. 959 [noting that while *Collins* "allowed the prosecution to refile the

previously dismissed charges as long as the defendant was not resentenced to a greater

term than provided in the original plea agreement," "*Stamps* did not extend *Collins* to

permit such a resolution, and instead held the People could completely withdraw from the

plea agreement if the prior serious felony enhancement was dismissed"].)  Moreover, that

there be no cap seems appropriate on a practical level.  If there is a cap, a defendant could

---

[10]  Not once did the *Stamps* court say anything even remotely suggesting a cap is appropriate on remand.  All the *Stamps* court said about *Collins* is the following: "Pursuant to a plea bargain, Collins pled guilty to a single count of oral copulation under former section 288a in exchange for dismissal of 14 other felony counts.  Prior to sentencing, the Legislature repealed former section 288a, decriminalizing 'the act of oral copulation between consenting, nonprisoner adults . . . .' [Citation.]  *Collins* reasoned the decriminalization of oral copulation applied retroactively under *Estrada* because the conviction was not yet final, and the defendant could not be sentenced for that offense. [Citation.]  However, *Collins* concluded the prosecution was entitled on remand to reinstate the dismissed counts because, '[w]hen a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain.' [Citation.]  *Collins* reasoned:  'Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled.  The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain—that defendant would be vulnerable to a term of imprisonment.  The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.' " (*Stamps*, *supra*, 9 Cal.5th at pp. 703-704, quoting *Collins*, *supra*, 21 Cal.3d at pp. 211, 212-213.)

10

refuse to plead to any restructured term, roll the dice, and go to trial assured that if convicted, no greater sentence would be imposed than he originally bargained for.[11]

The majority takes a different approach. My colleagues simply strike the prison enhancement and order that defendant be resentenced to the reduced term. Their approach is based primarily on two premises I believe to be erroneous: (1) defendant's sentence is unauthorized, and (2) there is a distinction between the *Stamps* treatment of S.B. 1393 and the remedy for S.B. 136 because the decisionmaker is somehow different in the context of S.B. 136.

I have already addressed the first premise. But even if I am wrong on that, the trial court should still have discretion to withdraw its consent from the agreement upon a finding that the reduced sentence does not further the interests of society.

As to the second premise, the majority reasons that, under S.B. 1393, "the decisionmaker is the trial court, exercising its discretion" in deciding whether to strike or dismiss a serious felony conviction enhancement. (Maj. opn., *ante*, at p. 7; see also *People v. Andahl* (2021) 62 Cal.App.5th 203, 214-215.) The majority then writes: "In contrast, in [S.B.] 136, *the Legislature is the decision maker*; the Legislature has declared that those who served a prior prison term for offenses other than certain sexually violent offenses shall no longer be subject to the prior prison term enhancement under section 667.5, subdivision (b)." (Maj. opn., *ante,* at pp. 7-8.) The majority adds: "*The court merely acts as the vessel through which the Legislature accomplishes and effects its directive*." (*Id.*, *ante,* at p. 9.) I disagree.

_____

[11] The court in *Griffin*, *supra*, 57 Cal.App.5th 1088, seems to have recognized this problem, but did not address it. The *Griffin* court wrote: "We do not address a situation where the parties fail to enter into a new plea agreement after a post-[S.B.] 136 remand, and the defendant is convicted at trial. Whether the trial court could sentence that defendant to a term in excess of the originally agreed upon sentence, and what circumstances might affect that determination, are questions well beyond the scope of the present appeal." (*Id*. at p. 1097, fn. 6.)

11

The Legislature did not decide what any defendant's sentence should be in enacting S.B. 136. It only decided that defendants should no longer be exposed to the one-year prior prison term enhancements. Consequently, the trial court is not a mere "vessel" (maj. opn., *ante,* at p. 8), because it must resentence the defendant and exercise discretion in doing so. In other words, the trial court remains the decisionmaker as to a defendant's sentence.

If this case were remanded for resentencing, as it should be, the trial court would be tasked with determining whether a reduced sentence is in the interests of society or whether it should withdraw consent. In considering that question, the trial court would consider the possible sentences that could be imposed for the dismissed count, strike conviction, and on-bail enhancement, in addition to factors in mitigation and aggravation as set forth in the California Rules of Court. Thus, the "in the furtherance of the interests of society" decision in this context is every much a discretionary decision as determining whether it is in "the furtherance of justice" to dismiss or strike a prior serious felony conviction under section 1385, subdivision (a) as the Legislature authorized in S.B. 1393. In my view, the difference the majority sees between S.B. 1393 and S.B. 136 is nonexistent.

The majority also relies on *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*) for the following: "the general rule in California is that a plea agreement is ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." ' " (*Id*. at p. 73.) But that quote only partially articulates the rule in *Doe* and ignores the issue presented to our high court in that case.

In *Doe*, the California Supreme Court answered a question directed to it by the Ninth Circuit Court of Appeal. Pending before the Ninth Circuit was litigation commenced by *Doe* in which he sought to avoid public disclosure of his sex offender registration required by post-conviction amendments to California's sex offender

registration laws enacted in Megan's Law. (*Doe*, *supra*, 57 Cal.4th at pp. 66-67.) He asserted this change in the law violated his plea agreement. (*Ibid.*) Our high court understood the Ninth Circuit's question as: "Under California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement *bind the parties* or can the terms of a plea agreement be affected by changes in the law?" (*Id.* at p. 66, italics added.) The court answered: "We respond that the general rule in California is that the plea agreement will be ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . ." ' [Citation.] *That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.*" (*Ibid.*, italics added.)

As can be seen by the italicized language, the question resolved in *Doe* related to whether subsequent changes in the law are binding *on the parties*. Our high court's holding that the parties are not insulated from changes the Legislature intends to apply *to them* does not address a trial court's discretion to withdraw consent from the agreement on remand after a change in the law. The *Doe* court simply was not asked to decide whether the change in the law binds the trial court when there are other counts or allegations available to which the court can sentence a defendant. And nothing in S.B. 136 suggests the Legislature intended to retroactively strip the sentencing court of its sentencing discretion, reverse the court's implied finding that the sentence it originally imposed was in the interests of society, and deprive the court of considering whether a new sentence, sans the prison priors, remains in the interests of society. Without such a legislative provision in the changed law, the trial court must still approve of the of the new sentence.

I disagree with other aspects of the majority's reasoning. The majority asserts that the Legislature is presumed to know that: "(1) Senate Bill No. 136 retroactively renders

13

sentences in nonfinal cases unauthorized; and (2) courts must strike an unauthorized sentence, even with respect to plea agreements. [Citations.] Thus, in considering the question of legislative intent -- i.e., whether the Legislature intended the change in the law to apply to plea agreements [citation] -- it seems logical that, because " ' "the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended [Senate Bill No. 136] in the light of such decisions as have a direct bearing upon [the statute]' [citation], the Legislature intended for the unauthorized sentence created by Senate Bill No. 136 to apply to plea agreements within the meaning of *Doe* unless otherwise expressed." ' " (Maj. opn., *ante*, at pp. 9-10.) But this misapprehends the scope of *Doe*, which cannot be read to prohibit trial courts from exercising their discretion to withdraw consent from a plea agreement as the result of S.B. 136. To the contrary, *Doe*'s emphasis on the fact that the change in the law is intended to apply to the parties only bolsters the conclusion I reach here.

Continuing this argument, the majority relies on *Harris, supra,* 1 Cal.5th 984. (Maj. opn., *ante,* at p. 10.) In my view, *Harris* also bolsters my analysis. As noted, in *Harris* our high court identified specific language in Proposition 47 applying its provisions to sentences resulting from pleas and thereby signaling the electorate's intent to apply those provisions in the plea bargaining context. (See fn. 5, *ante*.) Again, had the Legislature included a provision in S.B. 136 indicating its intent to apply it retroactively, including to sentences that were the result of a plea, then that legislative language would deprive the trial court of its discretion related to resentencing defendant. The Legislature would have the authority to do this, and in that situation, I suppose one could say the Legislature is the decisionmaker and the trial court is a mere "vessel." But that is not what the Legislature did. Nothing the Legislature did in enacting S.B. 136 changed *long-standing* law related to a trial court's ability to accept plea agreements and withdraw its consent from such agreements at resentencing in the exercise of its discretion.

14

### III.  Conclusion

Every day, trial courts preside over negotiated resolutions between the prosecution and defense.  As our high court has noted, trial courts have the duty to make sure the sentence agreed upon furthers the interests of society in light of "the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes."[12]  (*Stamps, supra*, 9 Cal.5th at p. 706.)  In a resentencing required by a change in the law, that responsibility is unchanged.  Here, based on no authority I can discern, the majority determines no resentencing is required and reduces defendant's sentence from five years to three years, when, from the trial court's perspective, that sentence might not have been in furtherance of the interests of society in the county where that court sits.  I cannot agree with this remedy.

Accordingly, I respectfully dissent.


/s/
MURRAY, J.

---

[12]  Sale of controlled substances is not a victimless crime.  Street sales happen in neighborhoods and detract from the quality of life of all those who reside there.

15